John White, Appellant, *v.* Joseph B. V. Butler and James D. Morrison and Wife, Appellees.

APPEAL FROM PIKE.

If the assignee of an equity of redemption acquires a title obtained under a judgment, prior in time to the mortgage, and has refunded to him by the mortgagor the amount which he has paid for the judgment, the title acquired under the judgment will be held subject to the mortgage.

A title thus acquired, will be treated in equity, as if obtained by and in the name of, the mortgagor.

This case was before this Court at last December term, and was then remanded. See 11 Illinois, 361. The bill afterwards was amended in the Pike Circuit Court, and the proceedings were substantially as follows. The amended bill alleges,

That at or about the time of the conveyance of said mortgaged premises to Butler by Morrison, they entered into an agreement

on the 24th of June, 1843, by which Butler agreed to deliver to Morrison 93,750 bricks at four dollars per thousand, on condition that Morrison should pay off and discharge all the demands as an incumbrance on lots number thirty-six and thirty-seven, in Peter's addition to the town of Pittsfield, being the same property that day deeded by Morrison and wife to Butler, the brick to be delivered by the first of November, 1844, if said incumbrance should be removed from the lots by that day, and not otherwise, though Butler bound himself to turn out a part of the bricks, or all, if required, at any time when called on, after the same become due, in discharge of any of the demands which were an incumbrance on the lots ; that the stipulation contained in said agreement, formed the terms or mode of payments by Butler to Morrison, and was the consideration, or a part of it, to be paid by Butler to Morrison for said mortgaged premises ; that the judgment in favor of Johnson against Morrison and the mortgage of White were liens, at the time the above agreement was entered into ; that the sheriff of Pike sold the lots upon the judgment in favor of Johnson to one Grimshaw ; that Grimshaw assigned his certificate of purchase to Butler, and Butler, as assignee, received a sheriff's deed for the premises ; that Morrison refunded to Butler the amounts paid by Butler to Grimshaw ; that thereby the purchase made of Grimshaw, enured to the benefit of Morrison ; and that Butler cannot set up title acquired through Grimshaw and the sheriff, to defeat the lien acquired by White by means of his mortgage ; that the mortgage is a valid subsisting lien upon said premises.

In his answer, Butler admits the execution of said agreement, and that the mortgage and judgment were liens at the time it was executed ; states that when he bought the sheriff's certificate of Grimshaw he had nearly paid Morrison in full of said agreement ; admits the sheriff's sale to Grimshaw, and assignment of certificate to him, and that sheriff executed a deed ; insists that the purchase from Grimshaw was to protect his own interests and not those of White ; admits that Morrison refunded the amount paid by him for the sheriff's certificate and deed ; states that after he acquired title through the judgment of Johnson, he settled with Morrison and paid him the full amount, deducting what

he had paid for the deed under Johnson's judgment. To this there was a replication. The bill was taken for confessed against Morrison and wife. At October term, 1851, Minshall, Judge, presiding, the bill was dismissed, and White appealed.

The proof showed, that Butler was aware of the liens in favor of White and Johnson when he purchased of Morrison, and that Morrison had, on a settlement of accounts between himself and Butler, repaid Butler what he had advanced to secure the title under the sale by virtue of Johnson's judgment.

J. Grimshaw, for appellant.

There can be no doubt, that on 30th June, 1843, when Butler, in writing, acknowledged notice of the mortgage to White, that White was entitled to foreclose against him.

To resist foreclosure now, Butler must show that since that time in good faith and for a valuable consideration, *actually* paid by Butler, he has acquired legal rights superior to those of White.

If Morrison paid the only consideration that was paid for the title under Johnson's judgment, such title enured to the benefit of White, both as against Morrison and Butler. Rev. St. 1845, p. 104, sec. 7; Frisby et al. *v.* Ballance, 2 Gilman, 145; White *v.* Morrison, 11 Illinois, 366.

At time of purchase of the Johnson title, Butler owed Morrison more than was paid for the Johnson title. Butler used this fund of Morrison's, then in his hands, to pay for the Johnson title; and Morrison testifies that he refunded to Butler, or allowed Butler on a settlement, the amount Butler paid for this Johnson title.

How much, then, from the testimony, did Butler pay for this title? We answer, nothing. All that has been paid was the money of Morrison.

Courts of Equity will decide upon cases arising, as they actually are, and not as the parties intended that they should appear. This case resembles Powell et al. *v.* Jeffries, 4 Scam. 389; Lambert *v.* Nanny, 2 Munford, 196.

The only attitude that Butler can assume to resist foreclosure, is that he *bonâ fide*, for a valuable consideration actually paid, has acquired a title senior to White's mortgage.

If he holds this title as a mere volunteer, if it cost him nothing, he would not be hurt by the decree, he would stand where he did on 30th June, 1843.

A plea of purchase for valuable consideration must be with the money actually paid, or else the party is not hurt. Jewett v. Palmer, 7 Johns. Ch. 67; Tourville v. Naish, 3 Peere Williams, 307; Murray v. Fimster, 2 Johns. Ch. 156; Mellwyn v. Lee, 9 Ves. Jr. 32; Beekman v. Frost, 18 Johns. 561; Howlett v. Thompson, 1 Ired. Ch. 375; Dickerson v. Tillinghast, 4 Paige, 221, 222.

Butler certainly can occupy no better attitude than this class of defendants. He bought with actual notice. He is no purchaser *bonâ fide* for a valuable consideration. He holds a naked legal title; but the proof shows that he has paid nothing for it. He did not acquire this title in good faith; he had then the means of Morrison in his hands, which he used to get this title.

This Court, in White v. Morrison, 11 Ills. 366, have decided the legal question in this case. There is no difference in the legal effect of the payment of the money for the Johnson title, whether Morrison paid the money directly, or whether Morrison paid it in the first instance and Morrison subsequently repaid him what he had advanced. In either event Butler has not actually parted with one dollar.

The only purchase by Butler, was the original purchase from Morrison in 1843; he then bought with knowledge of these incumbrances, and with abundant indemnity in his own hands against these incumbrances. He parted with that indemnity with his eyes open. His subsequent acquisition of the Johnson title is no purchase for value; he parted with nothing to acquire the title.

The only question to determine is one of fact. The testimony and answer of Butler show that Morrison refunded all that was paid to acquire the Johnson title.

If the court is satisfied that the refunding Butler's advance by Morrison was, in point of law and fact, the same as a payment directly by Morrison for the Johnson title, then complainant is entitled to a decree of foreclosure and sale.

R. S. BLACKWELL, for appellees.

Morrison was the owner of lots 36′ and 37, in Pittsfield, Illinois. Johnson recovered a judgment against Morrison, which was a lien upon these lots. Afterwards Morrison mortgaged these lots to White, the complainant; and subsequently conveyed by absolute deed the premises to the defendant, Butler. ˙After these transactions took place, the land was sold under Johnson's judgment; purchased by Jackson Grimshaw; the redemption was about expiring; White failed to redeem; Butler bought in the certificate of purchase, and afterwards procured a sheriff's deed for the land. Butler had notice of the mortgage to White when he purchased. White files his bill against Morrison for a foreclosure, and makes Butler a party. Butler answers, and sets up his purchase under the Johnson judgment.

The question is, "whether White or Butler has the better equity."

Morrison was bound, by an agreement with Butler, to extinguish the lien of Johnson's judgment. White, in order to protect his rights, was also bound to discharge that lien. Morrison and White both failed to do so; and Butler, to preserve his own rights in the premises, was compelled to purchase in the property under the Johnson judgment. If he had not done so, the rights of White were gone forever.

It is true that Butler, when he purchased, had notice of White's mortgage. But it is equally true that White had notice of the Johnson judgment. Both, then, are purchasers, with notice of a prior lien. And before either could avail themselves of their purchase or mortgage, they were, bound to discharge that incumbrance, or lose their rights in the land.

It therefore became a race of diligence between White and Butler. White slept upon his rights, and failed to redeem. Butler was vigilant in the protection of his interests, and purchased the rights acquired by Grimshaw under the Johnson judgment.

Here two equitable principles present themselves′ in favor of the precedence acquired by the vigilance of Butler.

10 *

Equity rewards the vigilant, and will not relieve those who are guilty of laches, or sleep upon their rights.

White acted the part of the "dog in the manger;" he would neither redeem himself, nor permit Butler to acquire any rights under his purchase. Butler has paid a full and fair consideration for this land, and is entitled to the favorable hearing of a court of equity. It is true he had notice of White's mortgage. But he relied, in good faith, upon the promise of Morrison to discharge it.

When Morrison failed to perform his promise, Butler had purchased the legal title under the Johnson judgment, and he is entitled to protection. For it is a maxim, that, where the equities are equal, the law must prevail.

Again, White was bound to pay off and discharge the lien of the Johnson judgment. He took no steps to do so. It was his own folly. And equity will not permit a party to take advantage of his fault.

There is no equitable estoppel upon Butler. There is no privity between him and White. And equity never favors an estoppel, because it shuts out the truth.

Again, he who is prior in point of time, has the superior equity. Johnson's judgment was the elder lien, and Butler was entitled to be substituted in his place.

Again, it is a maxim, that he who seeks equity must do equity. In equity, White was bound to discharge the lien of the Johnson judgment. He failed to do so. Butler, who had an equitable interest in the premises, was forced, in self-protection, to redeem or purchase under that judgment.

Now in equity, before White is entitled to a foreclosure, he should have paid, or tendered the money paid by Butler, to extinguish the Johnson judgment. This he was forbid to aver and prove; and, consequently, he is entitled to no relief.

Morrison, it is true, deducted from the purchase-money the amount paid by Butler to Grimshaw, but it was because Morrison had agreed to extinguish the prior lien. This did not make it the money of the mortgagor, Morrison. When paid, it was Butler's money. He purchased to protect himself. And

the money was not only never refunded to Butler, but he is out of pocket, in payments, $685.

Again, Butler purchased upon the faith of Morrison's promise to pay off the incumbrances. Morrison failed to do so. Then Butler bought the title, and upon the faith of acquiring a valid title, settled with Morrison, and paid the purchase-money due upon the land, after deducting what he had paid to procure a title.

TREAT, C. J. This case may be thus briefly stated. Morrison was the owner of two lots in the town of Pittsfield. In 1840, Johnson recovered a judgment against Morrison, which was a lien on the lots. In 1842, Morrison mortgaged the lots to White. In 1843, Morrison sold and conveyed the lots to Butler. At the same time, an agreement was entered into between Morrison and Butler, by which Butler agreed to pay Morrison $375, in part consideration for the lots, and Morrison agreed to discharge the existing incumbrances on the lots. In 1845, the lots were sold, under an execution issued on the judgment, to Grimshaw, for $58, the balance then due on the judgment. Grimshaw assigned the certificate of purchase to Butler, who obtained a sheriff's deed for the lots. Afterwards, a final settlement took place between Morrison and Butler, in which the latter was credited with the amount paid Grimshaw for the certificate. Subsequently, White filed a bill against Morrison and Butler, to foreclose his mortgage. Butler, in his answer, claimed title to the lots under the sheriff's deed, to the exclusion of the mortgage. The foregoing facts appear from the pleadings and proofs in the case. The Circuit Court dismissed the bill, and White brings the record into this court.

The complainant was clearly entitled to a decree. Butler was not in a position to rely upon the sheriff's deed. He received from Morrison the amount advanced for the certificate of purchase. He thereby waived his rights under the judgment. He could not receive back the purchase-money, and at the same time assert title under the conveyance. He was not a purchaser for a valuable consideration, for, in point of fact, he paid nothing

for the title. In equity, the whole transaction must be considered as but a payment of the judgment by Morrison. He was bound to discharge the incumbrance, and Butler was his debtor. Butler purchased the lots under the judgment, and then obtained credit for the amount of the purchase-money. In other words, he advanced the money on account of Morrison, and then received payment of the same. If he ever designed to assert title under the judgment, he abandoned that intention when he accepted payment from Morrison. If he made the purchase to protect himself against his mortgage, he surely would not have claimed or received payment from Morrison.

The decree of the Circuit Court will be reversed, and the cause remanded, with directions to that court, to enter a decree for the foreclosure of the complainant's mortgage.

*Decree reversed.*